JOURNAL ENTRY AND OPINION
This is an appeal from an order of Visiting Juvenile Court Judge Judith Cross that granted appellee Cuyahoga County Department of Children and Family Services ("CCDCFS") permanent custody of appellant Henry King, Sr.'s three children.[1] King claims CCDCFS failed to make diligent efforts to assist in remedying the problems that caused the children to be removed, there was insufficient evidence to prove he failed to comply with the case plan and that a planned permanent living arrangement for the children was the appropriate finding. We affirm.
King, a seventy-six-year-old World War II veteran and his forty-seven-year-old wife, married for twenty-six years,[2] had custody of two boys, born in 1985 and 1989 and a girl born in 1991. CCDCFS took emergency custody of the children in July 1999 after someone called and reported that he was beating them, an allegation he consistently denied.
In addition to the allegations of violence in the home, the social worker reported that, although the family lived in both parts of a two-family home, the home was cluttered with boxes stacked to the ceiling, there were three refrigerators and a deep freeze in the kitchen, because there was no room anywhere else in the house for them to sleep, the boys slept together in a twin-size bed in the kitchen, and the conditions were unsanitary.
The children were placed with an aunt but moved to a foster home after she was unable to cope with the added financial burden. For over two years the children have been together in that foster home, they have adjusted well, and the foster parents want to adopt them.
Initially, a case plan was prepared to facilitate reunification of the family.[3] Although King completed parenting classes, he failed to benefit from them and failed to obtain additional counseling or attend the anger management classes recommended by the parenting class official.
The social worker sent him letters requesting that he contact his insurance carrier to pay for these therapies, but he failed to follow through. During the permanent custody hearing King admitted that he received the letters but later claimed that his wife must have intercepted them and not given them to him. One of the letters, however, had been sent as certified mail and the receipt showed his signature.
The parents were given supervised visitation with the children at Metzenbaum Center because, when they were staying with their aunt, King had tried to take them home. The children expressed fear of their father and resisted these occasions, often asking the person supervising the visitation how soon they could leave and go back to the foster home. Indeed, the younger boy exhibited behavior problems both before and after each visit and received more counseling than the other two.
King's first assignment of error states:
 I. THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR PERMANENT CUSTODY OF HENRY, JULIUS AND ROSEMARY KING, FILED BY THE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, WHICH DECISION WAS AGAINST THE UNCONTROVERTED [sic] EVIDENCE PRESENTED AT TRIAL.[4]
King contends that CCDCFS failed: to make diligent efforts to assist him and his wife in correcting the problems that caused the initial removal of his children; to prove that he "failed to demonstrate the statutory requisite of substantial noncompliance" and; to provide clear and convincing evidence that he failed to comply with the case plan. He also submits that he worked on the house and did "somewhat complete four of the five objectives of the case plan" and, because there was conflicting testimony over whether he ever beat the children, CCDCFS did not prove by clear and convincing evidence that children could not be reunited with him within a reasonable period of time.
 In order to justify termination of parental rights and award permanent custody of a child who is neither abandoned nor orphaned to a public services agency, a juvenile court must find by clear and convincing evidence that: (1) the grant of permanent custody to the agency is in the best interest of the child; and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Clear and convincing evidence is "evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."
 "The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence." Therefore, when the court reviews awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed.[5]
In determining the best interest of the child, a judge considers the factors set out in R.C. 2151.414, which include:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
The factors listed in divisions (E)(7) to (11) include,
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code;
 (3) The parent committed any abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
 (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353
[2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 (15) The parent has committed abuse as described in section 2151.031 [2151.03.1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
We find that the evidence shows that the children have bonded with their foster parents and their children. Based upon the testimony of the social worker and foster father that the children feared their father and asked not to have visitation with him, there is no evidence of any bond with King.
There was testimony that the children want to be adopted by their foster parents and adoption would fulfill their need for a legally secure placement but cannot be achieved without terminating the natural father's parental rights.
We find, therefore, that termination of the parents rights and granting permanent custody to the county is in the best interest of the children.
Next we address the factors we take into consideration when determining if the child can be placed with the parents in reasonable time. Although King claims he has substantially complied with the case plan, the evidence presented at the hearing shows that he failed to successfully complete the parenting class because he did not comply with the order to get further counseling and attend anger management classes. Despite his claim that the county did not assist him with the case plan, the evidence shows that he failed to follow through with the plan despite repeated requests by the social worker.
Second, although King did repair the plumbing in the home, the social worker testified that, shortly before the hearing, the home was still dangerously cluttered to the point that she had to crawl around and over boxes to cross a room. This failure to provide safe shelter for the children not only shows that he did not comply with the case plan but also that he failed to comply with (E)(14) which requires the parent to be willing to provide for the child's shelter and basic necessities.
Most telling, however, is King's refusing to admit that he physically abused his children and blaming the children for the family's problems. This lack of insight into the primary cause of removal of the children from the home indicates that they would be in serious danger of repeated abuse if returned to him. The first assignment of error is overruled.
King's second assignment of error states:
 II. THE TRIAL COURT ERRED IN NOT ORDERING THE CHILDREN PLACED IN A PLANNED PERMANENT LIVING ARRANGEMENT WHEN AN ORDER WAS SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND WHICH EVIDENCE DID SATISFY THE STATUTORY REQUIREMENTS AND CONDITIONS WHICH ALLOW A DISPOSITIONAL ORDER OF PLANNED PERMANENT LIVING ARRANGEMENT.
King relies upon this court's ruling in In re: Rayshawn Campbell[6]
that PPLA was the appropriate placement in lieu of permanent county custody when children retained a significant relationship with the parent and the parent had made significant strides in completing the case plan. He claims that "there is no dispute that the children in the case subjudice have developed a bond with him and he has made great strides as a parent.' King reasons, therefore, "[a]pplying the court's rationale in Campbell, the case at hand is the precise situation PPLA is understood to embrace."
CCDCFS has asked this court to revisit its ruling which viewed PPLA as a "middle ground" between permanent custody and returning the child to the parents because it contends this position seriously misinterprets the statute and perverts its intent. R.C. 2151.353 states in pertinent part that the juvenile court may,
 (5) [p]lace the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
* * *
 (b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414
[2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
In order for this section of the statute to apply, evidence must exist to show, first, that adoption is not in the best interest of the child and no evidence was presented to establish this conclusion. Second, the evidence must show a "significant and positive relationship" with the parent. As previously noted, the children were afraid of their father and did not wish to see him. Although they did hug him when they saw him at visitation, the social worker indicated that their demeanor was not one of love and affection. Additionally, at visitation the children primarily interacted with each other and not with their parents, whom they were seeing for only two hours every other week. This behavior hardly shows a bond between the father and his children.
Thus, although PPLA has a proper place in fulfilling the rights and needs of children, this case is not the proper place for an order for PPLA. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from the appellant costs taxed herein.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] King stipulated that a Lorain County court granted permanent custody to the county of a daughter born in 1977. She was later adopted and is not a subject in this suit.
[2] Mrs. King did not appeal the decision to grant CCDCFS permanent custody.
[3] The case plan consisted of: the parents attending parenting classes and following through with any recommendations made as a result of those classes; the father establishing that he is mentally and emotionally able to care for the children; the father learning to communicate with the family without "resorting to violence and yelling"; the mother establishing that she is mentally and emotionally able to care for the children; the parents becoming "knowledgeable of the problems in family functioning and be[ing] capable of taking responsibility of concerns within their family"; the parents being able to provide care for the children without further incidences of abuse or neglect and becoming knowledgeable about the community resources available to them; the parents providing a safe home environment for the children by eliminating clutter and providing a bed and private sleeping space for each child; and the children becoming emotionally stable.
[4] On his assignment of error page appellant states this assignment of error as, "MOTION FOR PERMANENT CUSTODY OF H, J AND R KING BECAUSE THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL." We address the assignment of error as it is presented in the text of the brief.
[5] In re: Kunhwa Benoit (Nov. 2, 2000), Cuyahoga App. No. 76128, unreported, at 13-15. Internal citations omitted.
[6] (Oct. 12, 2000), Cuyahoga App. Nos. 77552, 77603, unreported.